# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**JOSE ERNESTO GADEA LEON**,

*Petitioner*,

v.

**PAMELA BONDI *et al.***,

*Respondents*.

No. 26-cv-00716

ORDER

**THIS MATTER** comes before the Court by way of a Petition for Writ of Habeas Corpus, (ECF No. 1), and the Court's prior January 23, 2026 Order, (ECF No. 4); and

**WHEREAS,** Petitioner is a 52-year-old native and citizen of Nicaragua. (Gov't Ex. B, ECF No. 6-2 at 2). He entered the United States on or about October 4, 2005. (*Id.* at 3). Petitioner was released on his own recognizance with a Notice to Appear and has resided in the United States for the past two decades. (*Id.*; Answer, ECF No. 6-1 at ¶ 3; Gov't Ex. D, ECF No. 6-4 at 2–4; Gov't Ex. E, ECF No. 6-5 at 2–3). He has no criminal history. (Gov't Ex. B, ECF No. 6-2 at 3). Petitioner's removal proceedings were terminated by an immigration judge on May 19, 2025. (*Id.*; Answer, ECF No. 6-1 at ¶ 18). He is not currently subject to a final order of removal. (Gov't Resp., ECF No. 6 at 2); and

**WHEREAS,** notwithstanding the foregoing and no final order of removal having been entered, Immigration and Customs Enforcement ("ICE") agents arrested and detained Petitioner on January 22, 2026, without providing him any bond hearing or other individualized custody determination following his detention. (*Id.*); and

**WHEREAS,** on January 23, 2026, this Court ordered Respondents to file an expedited

answer by January 26, 2026, at 9 a.m., identifying, among other things, the specific statutory or other legal authority for Petitioner's detention; the procedural due process afforded prior to detention; whether a final order of removal exists; any alleged changed circumstances justifying detention; whether Petitioner has received a bond hearing; and the current status of all related immigration proceedings; and

**WHEREAS,** Respondents filed an answer and letter response on January 25, 2026, which they acknowledge is incomplete and does not fully respond to the Court's Order.[1] (ECF No. 6 at 2). Additionally, Respondents acknowledge that the statutory arguments and facts in this case are materially identical to those that the Court has already rejected in *Bethancourt Soto v. Soto*, ____ F. Supp. 3d ____, No. 25-16200, 2025 WL 2976572 (D.N.J. Oct. 22, 2025) and other cases. (*Id.* at 1, 3); and

**WHEREAS**, it appears to the Court, at a minimum, that Petitioner is being unlawfully detained under Respondents' repeated invocation of 8 U.S.C. § 1225 because, as set forth in *Bethancourt Soto*, Petitioner was apprehended inside the United States after residing here for an extended period, and therefore he should have been detained under 8 U.S.C. § 1226, which requires

---

[1] While the Court acknowledges the efforts of the United States Attorneys' Office to comply with this Court's Orders in this and other matters involving the sudden re-detention of non-citizens, the Court is alarmed by Respondents' persistent and unjustified failure, better characterized as willful refusal or ineptness, to comply with lawful orders of federal district courts. This is just one of many instances in which Respondents have done so. Such conduct reflects a blatant disregard for judicial authority, undermines the administration of justice, and raises substantial questions as to Respondents' commitment to the rule of law. If Respondents are not prepared to provide the Court with the most basic information necessary to permit meaningful judicial review of a non-citizen's re-detention, then they should reconsider whether their current detention practices can be lawfully sustained.

an opportunity to seek bond;[2] and

**WHEREAS**, the Court notes that federal courts have in near unanimity similarly rejected the Government's position in approximately 300 cases to date, a number which climbs with every passing day. *See, e.g., Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *4–5 (E.D. Pa. 2025) (noting "the law is clear" and that "of the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here. Those decisions are plainly correct."); *see also* App., *Demirel*, 2025 WL 3218243 (ECF No. 11-1) (collecting cases); and

**WHEREAS**, the basis for the Petitioner's continued "detention [was] blatantly unlawful from the start, the only commensurate and appropriate equitable remedy to even partially restore [Petitioner] is to immediate[ly] release him and enjoin the Government from further similar transgressions," *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 366, 371–73 (S.D.N.Y. 2019)

---

[2] The Court notes that 8 U.S.C. § 1252(b)(9) does not strip the Court of jurisdiction over Petitioner's challenge to his *continued* detention because the challenge is collateral to "the removal process," and is not "inextricably linked" to any removal action. *See Khalil v. President, United States*, No. 25-2162, 2026 WL 111933, at *9 (3d Cir. Jan. 15, 2026); *Kourouma v. Jamison*, No. 26-0182, 2026 WL 120208, at *3 (E.D. Pa. Jan. 15, 2026) ("[W]hether a bond hearing is required prior to detention . . . is collateral to the removal process." (cleaned up)); *Cantu-Cortes v. O'Neill*, No. 25-6338, 2025 WL 3171639, at *1 (E.D. Pa. Nov. 13, 2025) (same); *see also Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018) (explaining that § 1252(b)(9) did not bar consideration of bond related issues under 8 U.S.C. §§ 1225 and 1226 because the noncitizens "[were] not asking for review of an order of removal, [were] not challenging the decision to detain them in the first place or to seek removal, and [were] not . . . challenging any part of the process by which their removability [was to] be determined" (cleaned up)). Here, the Petitioner's challenge to his continued detention "does not argue that his confinement is unlawful because the Government's removal action is itself invalid." *Kourouma*, 2026 WL 120208, at *3. Rather, the claim "challenges the Government's authority to detain him without a bond hearing," which is "not . . . decided through the [petition for review] process, nor is it capable of review once the immigration courts issue a final order on removal." *Id.* (cleaned up); *see also Khalil*, 2026 WL 111933, at *12 (explaining that challenges to "the length of confinement without a bond hearing . . . [do] not get channeled into the . . . [petition for review] process").

("[T]he Supreme Court has repeatedly upheld prisoners' rights to challenge the constitutionality of their detentions, and allow[ed] courts to implement corrective remedies, regardless of whether there were other bases for the petitioners to be subsequently detained."); the Court declines to allow Respondents to transform an unlawful detention into a lawful one through alternative, retrospective, *post hoc* justification presented mid-litigation, as doing so would give the Government a free pass to violate a person's statutory and constitutional rights first and search for authority later, *see, e.g.*, *Lopez-Campos v. Raycraft*, No. 25-12486, 2025 WL 2496379, at *7 & n.4 (E.D. Mich. Aug. 29, 2025) (citing cases) ("The Court cannot credit this new position that was adopted *post-hoc*, despite clear indication that Lopez-Campos was not detained under this provision."); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025) (releasing petitioner and explaining that the court "cannot credit Respondents' new position as to the basis for . . . detention, which was adopted *post hoc* and raised for the first time in this litigation"); *Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 46 n.8 (M.D. Pa. 2025) (releasing petitioner and discussing the impropriety of allowing the government to proceed on "*post hoc* justifications for detention"); *cf*. *Marshall v. Lansing*, 839 F.2d 933, 943–44 (3d Cir. 1988) ("[W]hen reviewing an administrative agency's decision, a court is generally not seeking some hypothetical rational support for the agency's action. A court must review the agency's actual on-the-record reasoning process . . . not a *post hoc* rationalization, or agency counsel's in-court reasoning."); therefore

**IT IS,** on this 26th day of January, 2026,

**ORDERED** that Petitioner's § 2241 Petition is **GRANTED**; Respondents shall **on this date IMMEDIATELY RELEASE** Petitioner under the same conditions that existed prior to his re-detention; and it is further

**ORDERED** that Respondents shall file a letter on the docket confirming the date and time

4

of Petitioner's release; and it is further

**ORDERED** that Respondents are **PERMANENTLY ENJOINED** from rearresting or otherwise detaining Petitioner under § 1225, which this Court has found inapplicable to him; and it is further

**ORDERED** that any future detention or re-detention of Petitioner must comply with all statutory and constitutional requirements, including the identification of a lawful statutory basis for detention and the provision of adequate procedural and substantive due process; and it is further

**ORDERED** that, to the extent that Respondents seek to re-arrest or otherwise re-detain Petitioner under any statutory authority, including but not limited to §§ 1225 or 1226, this Court shall retain jurisdiction over the matter and Petitioner may move to reopen these proceedings before this Court without the need to file a new habeas petition; and it is further

**ORDERED** that the hearing previously scheduled for January 26, 2026, at 12 p.m. is **CANCELED**; and it is finally

**ORDERED** that the Clerk of the Court shall **CLOSE** this case.

*/s/ Christine P. O'Hearn*
_____
**CHRISTINE P. O'HEARN**
**United States District Judge**